## COMPENSATION TO ENGINEERS OF RAPID TRANSIT COMMISSIONS.

Court of Appeals for Hamilton County.

JOHN C. ROGERS, A TAX-PAYER, v. CITY OF CINCINNATI ET AL.

Decided, December 21, 1916.

*Municipal Corporations—Provisions of the Statutes With Reference to Engineers of Rapid Transit Commissions—Where the Work is Performed by the City Engineer it Must be Without Additional Compensation.*

It is within the option of a municipal rapid transit commission created under authority of Sections 4000-16, *et seq.* (105-6 O. L., p. 286), to place an outside engineer in charge of the work and fix his compensation, or the work may be placed in charge of the city engineer; but where this is done the commission is without authority to allow him additional compensation on account of the services so required of him.

*Powel Crosley* and *John C. Rogers,* for plaintiff in error.

*Chas. A. Groom,* City Solicitor, and *Saul Zielonka,* Assistant City Solicitor, contra.

GORMAN, J.

The plaintiff, as a tax-payer of the city of Cincinnati, requested the solicitor of said city to bring an action against the defendants to enjoin the payment to Frank S. Krug of the sum of $9,000 per annum as engineer for the rapid transit commission. The solicitor refused to bring the action, and thereupon plaintiff in error brought suit against all the parties defendant in error.

The petition sets out that Frank S. Krug was on July 1, 1916, chief engineer of the sub-department of engineering of the department of public service of the city of Cincinnati upon a fixed salary of $6,000 per annum; that prior to the 1st day of July, 1916, said Krug had been appointed to his position as chief engineer by the mayor in the classified service of the city of Cin-

cinnati in accordance with the civil service law of the state. It was further averred that the board of rapid transit commissioners on November 29, 1915, had appointed or designated said Krug as its engineer, and that he had acted as its engineer until July 1, 1916, without compensation other than the salary provided for him as chief engineer of the city; that on July 1, 1916, the said commission appointed or designated said Krug as its chief engineer at a salary of $9,000 in addition to the $6,000 he was then receiving as engineer of the city of Cincinnati in the department of public service, making a total of $15,000 to be paid to him for his services.

The answer of the defendants sets up the appointment of the rapid transit commission under the law and the ordinance and the issuance of bonds aggregating $100,000, the proceeds of which were placed at the disposal of the rapid transit commission; and, further, that the people at a special election voted in favor of the bond issuance of $6,000,000 for the construction of the rapid transit railway system and the loop as designated by the rapid transit commission, and for purchasing and condemning the necessary land therefor, and set up all the laws and ordinances affecting the rapid transit commission. The answer further admitted the request made of the city solicitor by the plaintiff Rogers to bring suit and the refusal of the solicitor to commence the action, and admitted practically all the averments of the petition.

The plaintiff filed a demurrer to this answer, on the ground that it presents no defense to the plaintiff's petition.

This demurrer was overruled by the court below and the plaintiff not desiring to plead further, judgment was entered dismissing the petition at the costs of the plaintiff. To that judgment plaintiff in error prosecutes this proceeding in error to reverse the judgment of the court of common pleas.

Two questions are presented by the record: first, can the rapid transit commission employ engineers, clerks and employees and fix their compensation; and, secondly, can Frank S. Krug, while he is the engineer in the department of public service of the city of Cincinnati under fixed compensation of $6,000 per

year, have his compensation increased by the board of rapid
transit commissioners by the sum of $9,000 per year?

The decision in this case must rest upon the construction to
be given to the third section of the act providing for the crea-
tion of a rapid transit commission, found in 105-106 O. L., 286.
That section reads in substance as follows:

"The board of rapid transit commissioners may employ
clerks, engineers, superintendents and such other employees as
may be necessary, provided, however, that the chief engineer
of the sub-department of engineering of the department of pub-
lic service may be the engineer of said board and that the said
sub-department of engineering shall perform such engineering
services as may be determined by said board. The superinten-
dents, clerks, engineers, real estate experts, and attorneys of
the board shall be in the unclassified service, and all other em-
ployees shall be in the classified civil service of the municipality."

It is claimed by counsel for plaintiff in error that under this
section of the law the rapid transit commissioners have no right
to employ the engineer of the sub-department of public service
of the city of Cincinnati and to pay him an additional salary.
He does not question the right or power of the rapid transit
commissioners to appoint or designate this engineer, Mr. Krug,
to be the engineer or chief engineer of the rapid transit com-
mission, but he denies the power and authority of the commis-
sion to pay him any compensation in addition to that which he
is to receive as the engineer of the sub-department of public
service of the city of Cincinnati—$6,000.

This court is of the opinion that the contention of the plaint-
iff in error is sound, and that Mr. Krug can not be compensated
by the board of rapid transit commissioners in the sum of
$9,000, or any other sum, in addition to the compensation which
is paid to him for services rendered by him as engineer of the
sub-department of public service of the city of Cincinnati. The
plain meaning of this language set out in Section 3 is that the
board of rapid transit commissioners are given the option or
privilege, or right of *employing* an engineer who is not in the
employ of the city, or of *accepting* the services of the city's engi-

neer. When the services of the city engineer are accepted by this board of rapid transit commissioners by designating or appointing him as their chief engineer, then manifestly the plain intent and meaning of the statute is that he is to perform his duties additional to those which he had theretofore been performing as engineer in the sub-department of public service in the city of Cincinnati.

The language of the act is that the board "may *employ* clerks, engineers," etc., "provided, however, that the chief engineer of the sub-department of engineering of the department of public service *may be* the engineer of said board."

This means that the board, if it does not see fit to employ an independent engineer, may call upon and designate the city engineer to be its chief engineer, or its engineer. The act does not provide that the engineer of the sub-department of engineering of the department of public service *may be employed* by the rapid transit commission, but that he *may be the engineer* of said board, which clearly indicates the purpose of the Legislature not to permit him to be employed with additional compensation or in an independent capacity, but that the rapid transit commission, finding the engineer of the city at hand, can avail itself of his services.

Manifestly the Legislature in so providing had in mind that the engineer of the city of Cincinnati, because of his position, would be more familiar with the topography of the city and the country through which this system is to be constructed, familiar with the streets and the location of the water-mains, gas-mains, sewers, conduits and other underground utilities of the city; that he had at hand the facilities, the assistants and the means of doing the work perhaps better than any independent engineer; and, furthermore, that because of his position and relation to the city of Cincinnati he could avoid any friction between an outside engineer who might be employed by the rapid transit commission, and the engineer of the city under the department of public service.

Furthermore, the Legislature no doubt had in mind in this provision that it would conduce to economy for the rapid tran-

sit commission to call upon the engineer of the city of Cincinnati to perform these services as its engineer and thereby save the compensation of an additional engineer.

- It appears to us that by no stretch of language can this section be construed to mean that the rapid transit commissioners were to employ and allow additional compensation to an officer of the city of Cincinnati who was then under salary under the civil service law, apparently amply paid for the services he was rendering, in the absence of any express language in the statute or some other law which would enable them to pay him an additional salary or compensation.

It is elementary law that municipal corporations have such, powers and only such as are expressly granted by the Legislature, or which are necessarily implied in order to carry into effect the express grants of power. It is the settled law of this state that a public officer elected or appointed can not receive any additional compensation by reason of the fact that additional duties are imposed on him or assumed by him, unless the Legislature has expressly provided that such additional compensation may be paid. *Anderson* v. *Commissioners,* 25 O. S., 13; *Jones, Auditor,* v. *Commissioners,* 57 O. S., 189; *Schwartz* v. *Commissioners,* 54 O. S., 669; *Debolt* v. *Trustees,* 7 O. S., 237.

There is no provision in this act, nor in any other statute brought to our attention, whereby additional compensation may be paid to the engineer of the city of Cincinnati, if he be designated or appointed by the board of rapid transit commissioners as its chief engineer.

In view of the fact that this third section of the act under consideration provides that the sub-department of engineering of the city shall perform such engineering services as may be determined by the board of rapid transit commissioners, it would be just as reasonable to claim that this board would have the power and authority to give additional compensation to all the employees of the sub-department of engineering of the city of Cincinnati, as to give additional compensation to the chief engineer, Mr. Krug. Manifestly the Legislature never intended nor contemplated, when this law was passed—and the

language will not bear such construction—that all the employees of the engineering department of the city, including the chief engineer, should have additional compensation for services which they might render to the rapid transit commission in addition to the duties they are called upon to perform under their appointment or employment. If the contention of the city solicitor were sustained by this court, it would in effect mean that the rapid transit commission might also give additional compensation to the city solicitor for services which he renders in advising the board and acting as its counsel. The board of rapid transit commission itself placed no such construction upon this third section of the law as is now claimed for it when it appointed Mr. Krug, the first time, as its engineer, in November, 1915. It appointed or designated him as its engineer without compensation, and it was only in July, 1916, more than six months after he had been acting as the engineer of this board that it undertook to fix additional compensation for him.

It is further urged on behalf of the plaintiff in error that even if compensation can be given to the employees of the rapid transit commission, provision therefor would have to be made by the council of the city of Cincinnati, inasmuch as under Section 4214, General Code, it is provided that council shall by ordinance or resolution

"determine the number of officers, clerks and employees in each department of the city government and shall fix by ordinance or resolution their respective salaries and compensation and the amount of bond to be given for each officer, clerk or employee in each department of the government if any be required. Such bond shall be made by such officer, clerk or employee, with surety subject to the approval of the mayor."

As to this contention the court is of the opinion that the act providing for the rapid transit commission gives it the authority to employ the necessary clerks, engineers, employees, etc., that it is an exception to Section 4214, General Code, this act (105-106 O. L., 286) having been passed subsequently to

the enactment of Section 4214 and being in apparent con-
flict with it.   We would hesitate to construe this law so as
to hold that the council of the city of Cincinnati could ham-
per the action of the commission by neglecting or refusing
to provide for the compensation of the clerks, employees, etc.,
who might be employed by this commission, or by providing
them with insufficient compensation.   We think that the fair
construction of the act requires us to hold that the board of
rapid transit commissioners has the power and authority to
employ the necessary clerks, engineers and employees, and as
an incident to their employment to fix their compensation,
without being required to call upon the council of the city
of Cincinnati to fix such compensation.   In this particular in-
stance it seems to us that Mr. Krug can not be an independent
employee of the rapid transit commission, as is claimed by
the city solicitor, and at the same time act as the engineer in
the sub-department of public service of the city of Cincinnati.
The very objection which the city solicitor urges could be
made, if Mr. Krug occupy the dual position of being under
the direction and control of the director of public service in
the engineering department of the city of Cincinnati at a
salary of $6,000 a year, and at the same time under the in-
dependent control of the rapid transit commission at a salary
of $9,000.   He would be, in effect, serving two masters, and
perhaps under conflicting orders given by the director of pub-
lic service and the board of rapid transit commissioners.

We hold that the rational construction to be placed upon
the language of Section 3 of the act under construction is,
that the board of rapid transit commissioners, at their op-
tion, may employ an engineer who is not holding a position
in the public service of the city of Cincinnati, and fix his
compensation; or it may designate the engineer of the city
of Cincinnati as its engineer, but in so doing can not allow
him any additional compensation.

We do not deem it necessary to cite numerous authorities
in support of the conclusions we have reached, but content our-
selves with holding that the demurrer filed by the plaintiff in

error, to the answer of the defendants, should have been sustained and not overruled; and for this reason the judgment of the court below is reversed, and the cause remanded for further proceedings.

JONES, (E. H.), P. J., and JONES (Oliver B.), J., concur.

## DECREE OF DIVORCE GRANTED IN ANOTHER STATE RES ADJUDICATA IN OHIO.